**ELLIS M. JOHNSTON III**
California State Bar No. 223664
CLARKE JOHNSTON THORP & RICE PC
1010 Second Avenue, Suite 1800
San Diego, CA 92101
Tel: (619) 756-7632
Fax: (619) 684-3569
E-Mail: tripjohnstonlaw@gmail.com

Attorney for Ms. Esquivel

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA
### (HONORABLE MICHAEL M. ANELLO)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No.: 16CR747-MMA |
| Plaintiff, ) | |
| vs. ) | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS FOR DISCOVERY, PRESERVATION OF EVIDENCE, AND LEAVE TO FILE ADDITIONAL MOTIONS |
| BERTHA LIDIA ESQUIVEL, ) | |
| Defendant. ) | |

## I.
## **FACTUAL BACKGROUND**[1]

Bertha Esquivel was arrested on March 24, 2016, in the Central District of California and removed to this District, ultimately being indicted with various charges related to the use and maintenance of an international tunnel and drug offenses involving marijuana. DE 24. Ms. Esquivel pled not guilty, and these motions follow.

//
//
//
//

---

[1] This statement of facts is based on information provided by the government against Ms. Esquivel. Ms. Esquivel does not admit the accuracy of these facts and reserves the right to challenge these facts at later proceedings.

1

## II.

**<u>Motion to Compel Discovery, Preserve Evidence and Receive a Discovery Log</u>**

Ms. Esquivel requests the preservation and production of all relevant materials under Federal Rule of Criminal Procedure 16, *Brady v. Maryland*, and the *Jencks* Act.

This request includes all material information in the government's possession. Rule 16 "grants criminal defendants a broad right to discovery." *United States v. Stever*, 603 F.3d 747, 752 (9th Cir. 2010). Evidence is material under Rule 16 if it has any tendency to prove or disprove a consequential fact in the case. *See United States v. Doe*, 705 F.3d 1134, 1151 (9th Cir. 2013) (holding that even evidence only relevant to discrediting an implausible defense must be produced under Rule 16). Rule 16's "low threshold" of materiality only asks whether information would help to prepare the defense. *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013). The government must produce any material information in its possession, custody, or control, and "lack of knowledge [about the evidence's existence] or even a showing of due diligence won't excuse non-compliance." *See id.* Consequently, the government should make every effort to locate and produce relevant discovery, erring on the side of disclosure.

Moreover, due process requires the government to produce all favorable evidence to the accused relevant to the issues of guilt and punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). And whether one agrees that there's "an epidemic of *Brady* violations abroad in the land," *United States v. Olsen*, 737 F.3d 625, 626 (9th Cir. 2013) (order) (Kozinski, C.J., dissenting from denial of reh'g en banc), both the Court and the government should resolve doubts about *Brady* discoverability in favor of disclosure. *See United States v. Agurs*, 427 U.S. 97, 108 (1976) (noting that "the prudent prosecutor" will resolve doubts about *Brady* discoverability in favor of disclosure). The government has an affirmative obligation to fully produce *Brady* materials regardless of whether they have been requested by the defense. *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (interpreting *United States v. Bagley*, 473 U.S. 667 (1985)). Specifically, it must turn

over "all evidence relating to guilt or punishment which might reasonably be considered favorable to the Ms. Esquivel's case, even if the evidence is not admissible so long as it is reasonably likely to lead to admissible evidence." *United States v. Price*, 566 F.3d 900, 913 n.14 (9th Cir. 2009) (citing favorably the pretrial *Brady* discovery standard employed by several district courts "[f]or the benefit of trial prosecutors") (quotations and citations omitted).

The government has often argued that it need only produce favorable evidence to the defense if, in the government's estimation, it meets the appellate standard of materiality, i.e., "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *See, e.g.*, *Bagley*, 473 U.S. at 682. But "[t]his analysis obviously cannot be applied by a trial court facing a pretrial discovery request," much less by the prosecution, because "[w]hether disclosure would have influenced the outcome of a trial can only be determined after the trial is completed and the total effect of all the inculpatory evidence can be weighed against the presumed effect of the undisclosed *Brady* material." *United States v. Sudikoff*, 36 F.Supp.2d 1196, 1198-99 (C.D. Cal. 1999). Hence, the Ninth Circuit's endorsement of the disclosure standard quoted above in *Price*, one that emphasizes resolving doubts about discoverability in favor of disclosure. *See also United States v. Sedaghaty*, 728 F.3d 885, 899 (9th Cir. 2013) (acknowledging the difference between pretrial and appellate standards when affirming that favorable evidence should have been turned over before trial but then applying the materiality analysis to determine whether such an error requires reversal); *Cf. Carriger v. Stewart*, 132 F.3d 463, 481 (1997) (en banc) ("We have held that the government cannot satisfy its *Brady* obligation to disclose exculpatory information by making some evidence available and claiming the rest would be cumulative.").

Ultimately, producing all relevant materials serves the aligned interests of the government, the justice system, and Ms. Esquivel. Defense counsel are servants of justice in our adversarial system; their advocacy aids in the accuracy of trial results; and

3

they cannot perform this role effectively without the ability to marshal the evidence that supports their clients. *Compare Herring v. New York*, 422 U.S. 853, 862 (1975), *with McNeil v. Wisconsin*, 501 U.S. 171, 183 (1991) (Stevens, J., dissenting). Indeed, when the government discloses all relevant evidence, it may convince the defense that accepting a government plea offer is the only reasonable option; thus erring on the side of disclosure can preserve both prosecutorial and judicial resources. Furthermore, the government must affirmatively aid the defense under *Brady* precisely because the duty to see justice done with proper methods transcends the government's adversarial role. *See Bagley*, 473 U.S. at 675 n.6 (citing *Berger v. United States*, 295 U.S. 78, 88 (1935) (explaining that the government has a duty to see justice done with proper methods, not a duty to win)). While failure to disclose relevant information increases the risk that the government will obtain victory without justice, disclosing relevant information will always serve the government's transcendent duty to value justice over victory.

"Only judges can put a stop to [*Brady* violations.]" *Olsen*, 737 F.3d at 626 (order) (Kozinski, C.J., dissenting from denial of reh'g en banc). Accordingly, the Court should order the government to create and share a discovery log documenting every piece of evidence considered for production and describing, when applicable, why any given piece of evidence was withheld. Failure to at least disclose the existence of plausibly discoverable evidence usurps the judicial role of resolving discovery disputes just as surely as destroying the evidence would have. *Cf. Harris*, *supra*. In both cases a unilateral prosecutorial act renders judicial review functionally impossible, whether by failing to preserve evidence or by failing to inform opposing counsel of its existence.

Additionally, Ms. Esquivel makes the following specific production requests and clarifications of the government's *Brady* obligation:

(1) <u>Ms. Esquivel's Statements</u>. *Brady* compels production of all of Ms. Esquivel's statements made in the presence of potential government witnesses as both impeachment evidence and information likely to lead to impeachment evidence. *See Giglio*, 405 U.S. 150, 153-54 (1972) (emphasizing the importance under *Brady* of disclosing evidence

4

affecting the credibility of witnesses). The government must disclose *all* copies of any written or recorded statements made by Ms. Esquivel; the substance of any statements she made, whether documented or not, that the government intends to offer in evidence at trial; any response by her to interrogation; any written summaries of her oral statements contained in the handwritten notes of the government agent; any response to any *Miranda* warnings that may have been given to her; and any other statements she made. Fed. R. Crim. P. 16(a)(1)(A) and (B). The Advisory Committee Notes and the 1991 amendments to Rule 16 make clear that the government must reveal *all* of Ms. Esquivel's statements, whether oral or written, regardless of whether the government intends to make any use of those statements.

(2) <u>Reports and Notes</u>. *Brady* compels production of all arrest reports, investigatory reports, notes, and rough notes related to the case as impeachment and exculpatory evidence as well as information likely to lead to impeachment and exculpatory evidence.

(3) <u>Dispatch Tapes</u>. Ms. Esquivel requests preservation and production of all relevant dispatch tapes, including but not limited to all related dispatch tapes from the date of her arrest.

(4) <u>Understandings, Conversations, and Communications With Potential Witnesses</u>. *Brady* compels production, as impeachment evidence and information likely to lead to impeachment evidence, of all explicit or implicit promises, considerations, or understandings given to or entered into with witnesses in exchange for their testimony, as well as all conversations, negotiations or other communications that either eventually led to such an understanding or else might have been construed as leading towards such an understanding. Ms. Esquivel also specifically requests this information under Rule 16.

(5) <u>Prior Records of Ms. Esquivel and of Government Witnesses</u>. *Brady* compels production of the government witnesses' prior criminal and prison records as both impeachment evidence and information likely to lead to other impeachment evidence.

This request includes prison records because *Brady*'s requirement of turning over "*all* material information casting a shadow on a government witness's credibility" cannot be satisfied without producing this evidence. *Carriger*, 132 F.3d at 479 (interpreting *Giglio v. United States*, 405 U.S. at 481-82 (emphasis in original) (quoting *United States v. Bernal-Obeso*, 989 F.2d at 335)). Ms. Esquivel also requests a copy of her own prior criminal record. Fed. R. Crim. P. 16(a)(1)(D).

(6) <u>Prior Acts Disclosures</u>. Ms. Esquivel requests notice at least three weeks before trial of the general nature of any crimes, wrongs, or other acts that the government intends to introduce at trial. Fed. R. Evid. 404(b)(2). This includes evidence the government intends to introduce as impeachment or rebuttal. *United States v. Vega*, 188 F.3d 1150, 1154-55 (9th Cir. 1999). Sufficient notice requires the government to "articulate *precisely* the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." *United States v. Mehrmanesh*, 689 F.2d 822, 830 (9th Cir. 1982) (emphasis added; internal citations omitted); *see also United States v. Brooke*, 4 F.3d 1480, 1483 (9th Cir. 1993) (reaffirming *Mehrmanesh* and reversing convictions).

(7) <u>Material Documents and Objects</u>. Ms. Esquivel requests the opportunity to inspect and to copy or photograph all relevant documents and objects that are within the government's possession, custody or control, including all relevant books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items. Fed. R. Crim. P. 16(a)(1)(E). This includes all exculpatory and inculpatory evidence. *See Hernandez-Meza*, 720 F.3d at 768 ("Information is material even if it simply causes a defendant to 'completely' abandon' a planned defense and 'take and entirely different path.'").

This request also includes access to any evidence that was obtained from or belongs to Ms. Esquivel, including cell phones, other electronics, and their data, regardless of whether they were seized without a warrant or searched by the government. Fed. R. Crim. P. 16(a)(1)(E)(iii).

6

(8) <u>*Henthorn* Review</u>. The Court should order the prosecutor to oversee, if not personally conduct, a review of the personnel files of each government employee involved in this case to search for materials discoverable under *Brady*. "[T]he individual prosecutor has a duty to learn of any [*Brady*] evidence known to the others acting on the government's behalf in the case[.]" *Kyles*, 514 U.S. at 437; *United States v. Henthorn*, 931 F.2d 29, 30-1 (9th Cir. 1991) (Ms. Esquivel's request for this review triggers the prosecutor's obligation to conduct it).

(9) <u>Evidence of Criminal Investigation of Any Government Witness</u>. *Brady* compels production, as impeachment evidence or information likely to lead to impeachment evidence, of any information showing that a prospective government witness is, has been, or may be under criminal investigation by any federal, state, or local authorities. *See Carriger*, *supra* (discussing the inherent untrustworthiness of criminal witnesses). Ms. Esquivel also makes this request under Rule 16.

(10) <u>Evidence Affecting Perception, Recollection, Ability to Communicate, or Veracity</u>. *Brady* and Rule 16 compel production of any materials tending to show that a prospective witness's ability to perceive, remember, communicate, or tell the truth is impaired, as well as any evidence that a witness has ever used narcotics or other controlled substance, or abused alcohol.

(11) <u>Preservation of Materials Related to the Case</u>. Ms. Esquivel seeks an order preserving all materials related to this case so that the Court can resolve any disputes about discoverability, including all materials that reasonably might be discoverable under Rule 16, *Brady*, and the *Jencks* Act. This request includes but is not limited to the preservation of all materials either specifically requested for production or that have been described by Ms. Esquivel as falling within the government's *Brady* disclosure obligation.

Ms. Esquivel further requests that the prosecutor be ordered to *question* all agencies and individuals involved in the prosecution and investigation of this case to

determine if such evidence exists, and if it does exist, to inform those parties to preserve any such evidence.

(12) <u>Expert Witnesses</u>. The government must provide a written summary of expert testimony that it intends to use at trial, and this summary must include the witness's opinions, the bases and reasons for these opinions, and the witness's qualifications. Fed. R. Crim. P. 16(a)(1)(G). The Defense requests this summary at least three weeks before trial in order to properly respond, if necessary, by obtaining its own expert and challenging the opinions and credentials of the government's expert during a hearing in advance of trial. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999) (declaring the trial judge the "gatekeeper" who shall determine the reliability and relevancy of expert testimony by way of "special briefing or other proceedings" as necessary).

(13) <u>Reports of Scientific Tests or Examinations</u> Mr. Esquivel requests the results of any scientific or other tests or examinations conducted by or on behalf of the government in connection with this case. *See* Fed. R. Crim. P. 16(a)(1)(F).

(14) <u>*Jencks* Act Material</u>. Ms. Esquivel requests that the government produce all of the statements of any prospective witness relating to the expected direct testimony of the witnesses, including any kind of recording contemporaneous to the witness's pertinent past statements. *See* 18 U.S.C.A. § 3500. A verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under section 3500(e)(1). *Campbell v. United States*, 373 U.S. 487, 490-92 (1963); *see also United States v. Boshell*, 952 F.2d 1101 (9th Cir. 1991) (holding that interview notes constitutes *Jencks* material when an agent reviews notes with the subject of the interview); *see also United States v. Riley*, 189 F.3d 802, 806-08 (9th Cir. 1999). Advance production will avoid the possibility of delay of the motion hearing or trial to allow Ms. Esquivel to investigate the *Jencks* material. Ms. Esquivel requests pretrial disclosure of such statements to avoid

unnecessary recesses and delays and to allow defense counsel to prepare for, and use properly any Jencks statements during cross-examination.

(15) <u>Video and Audio Footage of Ms. Esquivel</u>. Ms. Esquivel specifically requests under Rule 16 that the government produce a copy of any video or audio footage it possesses of Ms. Esquivel.

(16) <u>Subpoena, Intercept and Warrant Information and Evidence</u>. Ms. Esquivel requests a copy of all electronic interception orders, search warrants, sealing orders and subpoenas (whether state or federal, whether written or telephonic, and including recordings or transcripts of telephonic applications), and all related applications for electronic interception, subpoenas and warrants, their affidavits, attachments, and inventories related to this case. She also requests copies of all documents provided to or seized by the government pursuant to such court-authorized orders. She requests copies of all recordings made by the government made pursuant to warrant or order as well as line-sheets and any other documentation of such recordings.

(17) <u>Residual Request</u>. Ms. Esquivel intends by this discovery motion to invoke discovery to the fullest extent possible under the Federal Rules of Criminal Procedure, the Constitution, and laws of the United States.

### III.
### MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS

Defense counsel has received approximately 1,000 pages of discovery to date. Counsel has also provided a 6 terabyte hard drive to the government at the government's request which has not yet been returned. Counsel anticipates the need to file further motions once discovery has been fully reviewed, thus his request for leave to file further motions.

|    |                          |                                  |
|----|--------------------------|----------------------------------|
| 1  |                          |                                  |
| 2  |                          | Respectfully Submitted,          |
| 3  | DATED:  May 11, 2016     | *s/ Ellis M. Johnston III*       |
| 4  |                          | **ELLIS M. JOHNSTON III**        |
| 5  |                          | Attorney for Ms. Esquivel        |

1
2    Respectfully Submitted,
3    DATED:  May 11, 2016        *s/ Ellis M. Johnston III*
                                 **ELLIS M. JOHNSTON III**
4
5                                Attorney for Ms. Esquivel
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

Counsel for Defendant certifies that the foregoing pleading is true and accurate to the best of his information and belief, and that a copy of the foregoing document has been served this day upon all parties in accordance with CM/ECF filing procedures.

Respectfully Submitted,

DATED: May 11, 2016        s/ *Ellis M. Johnston, III*
**ELLIS M. JOHNSTON, III**
Attorney for Ms. Esquivel